(December 16, 1895.)

# FIRST NATIONAL BANK OF HAILEY v. VAN NESS.

[43 Pac. 59.]

Special Findings of Jury—Defrauding Creditors.—Where special findings of a jury are not supported by the evidence, they will be disregarded.

Same.—Where a judgment is based on findings of a jury in a special verdict not supported by the evidence, the same will be set aside.

APPEAL from District Court, Alturas County.

R. F. Buller and Texas Angel, for Appellant.

The jury found, and it is a fact, that Hodgman transferred the notes to Van Ness fraudulently. Nevertheless they also saw proper to find that he did not participate in the fraudulent intent. But he was a mere voluntary grantee, and that is fraudulent *per se.* (Bump on Fraudulent Conveyances, 2d ed., 268.) A fraudulent transfer cannot be purified by merely abandoning the fraudulent purpose for which it was given and using it for an honest one. "If a transfer is fraudulent, the subsequent payment in full of the purchase money will not render it valid." (Bump on Fraudulent Conveyances, 2d ed., 474; *Bunn v. Ahl,* 29 Pa. St. 387, 72 Am. Dec. 639; *Borland v. Mayo,* 8 Ala. 104; *Chenery v. Palmer,* 6 Cal. 119, 65 Am. Dec. 493; *Wood v. Hunt,* 38 Barb. 302; *Lynde v. McGregor,* 95 Mass. 182, 90 Am. Dec. 188; *Law v. Payson,* 32 Me. 521; *Holcomb v. Ray,* 1 Ind. 340.)

P. M. Bruner and M. E. Bruner, for Respondent.

It is a well-settled rule that when the verdict of a jury, affirmed by the judge presiding, goes to the supreme court, indorsed by the refusal of the court which tried the case to grant a new trial, the supreme court will not interfere on the ground "that the evidence was insufficient to justify the verdict." "Jurors are the appropriate judges of facts, as the courts are of law." (*State v. Anderson,* 19 Mo. 246; *K. P. Ry. Co. v. Kunkel,* 17 Kan. 171-173.) The jury found that Hodgman transferred the notes with the intention of hindering, delaying

and defrauding his creditors, but they also found that Van Ness
did not know of the fraudulent intent on the part of Hodg-
man, but purchased them in good faith, and for a valuable
consideration; and it has been determined and settled by the
appellate courts "that a question whether a particular transfer
of property is in good faith or in fraud of creditors is a ques-
tion for the jury, and their findings when affirmed in the ap-
pellate court are final and cannot be reviewed in the supreme
court." (*Foster v. Magill,* 119 Ill. 75, 8 N. E. 771.)

HUSTON, J.—Appellant, having recovered judgment
against one J. W. Hodgman and others upon a note for $5,000,
garnished defendants, as debtors of, or holding property and
effects belonging to, said Hodgman. In its complaint, appel-
lant alleges that at the date of its service the defendant Mc-
Leod was indebted to said Hodgman in the sum of $600, bal-
ance due upon two promissory notes, for $400 each, dated Sep-
tember 29, 1890, executed by defendant McLeod to one David
Earhart; that the said notes were really the property of defend-
ant Hodgman, and were made in the name of Earhart to de-
fraud the creditors of said Hodgman, and that they were after-
ward, in pursuance of the same design to hinder, delay, and
defraud creditors of said Hodgman, and particularly plaintiff,
transferred, fraudulently and without consideration, to defend-
ant Van Ness; that defendant McLeod admitted the indebted-
ness, but said that Van Ness claimed the notes, and defendant
Van Ness answered, denying that he was indebted to said Hodg-
man, or had any of his property under his control; that after-
ward, on the 5th of June, 1893, judgment was rendered in
favor of appellant, and against said Hodgman and others,
in said cause, for $10,075 and costs, upon which execution was
duly issued, and said McLeod and Van Ness again summoned
as garnishees. Defendant McLeod filed no answer. Defendant
Van Ness answered, denying knowledge of the alleged indebt-
edness of Hodgman, and denying the alleged indebtedness of
himself to Hodgman, and alleging that prior to the twenty-
ninth day of May, 1891, two notes, for $400 each, dated Septem-
ber 29, 1890, executed by defendant McLeod to David Earhart,
were sold, assigned and transferred to him for a valuable con-

sideration, and that they were his sole and individual property at the time of the service of the garnishment, viz., June 5, 1891. Issue was joined upon the answer of defendant Van Ness and a trial had before the court with a jury. The following special findings were returned by the jury: "Q. 1. Was J. W. Hodgman the real owner of the notes that were placed in the hands of J. H. Van Ness? A. 1. Yes. Q. 2. Did J. W. Hodgman have the notes made payable to David Earhart, and transferred to J. H. Van Ness, for the purpose of placing and keeping them out of the hands of his creditors? A. 2. Yes. Q. 3. If J. W. Hodgman so placed the notes to keep them out of reach of his creditors, did J. H. Van Ness participate in such intent and purpose? A. 3. No. Q. 4. Did J. H. Van Ness purchase the notes mentioned in plaintiff's complaint, for a full and valuable consideration, on the thirtieth day of May, 1891, in the ordinary course of business, for himself, and in good faith? A. 4. Yes. Q. 5. Was the transfer of the notes from J. W. Hodgman to J. H. Van Ness made with intent to hinder, delay and defraud the creditors of said Hodgman? A. 5. Yes. Q. 6. Did J. H. Van Ness know this? A. 6. No." The answers Nos. 1, 2, and 5 are given by the entire jury. The answers Nos. 3, 4, and 6 are by a majority of the jury. Motion for judgment upon the findings of the jury was made by appellant, and denied by the court, and judgment was entered in favor of defendant Van Ness for costs, from which judgment, and the order overruling motion for new trial, this appeal is taken.

It is contended by appellant that the motion for judgment by appellant upon the special verdict should have been granted by the court, for the reason that the third, fourth, and sixth findings are unsupported by the evidence. The evidence is conclusive upon the following facts: That Hodgman was the real partner of McLeod, under the firm name of Earhart & McLeod; that, when Earhart pretended to sell his interest in said firm, such interest really belonged to Hodgman, and the name of Earhart was used simply as a guise or cover for Hodgman against his creditors; that the notes given by McLeod in payment of the pretended interest of Earhart, although made payable to Earhart, were really the property of Hodgman, and

were by Hodgman placed in the hands of Van Ness, and by Van Ness placed in the appellant bank; that, when said notes were so placed in said bank by Van Ness, they were the property of Hodgman. Van Ness testified that he supposed the notes belonged to Hodgman. He had been an intimate friend of Hodgman for years, and apparently well advised as to his business affairs. The notes (three in number, for $400 each) were on the day of their execution delivered by Hodgman to Van Ness, and by the latter deposited in the bank, and as fast as payments were made on them the money was remitted by Van Ness to Hodgman. That Van Ness knew that Hodgman was the owner of the notes is too clearly shown by the evidence to admit of doubt. It is apparent from all the evidence that Van Ness never had any interest in the notes, up to May 30, 1891, the time of the alleged sale to him of the two unpaid notes for the sum of $625 by Hodgman, for Earhart. Van Ness testifies: "I think it was on the thirtieth day of May, 1891. Hodgman asked me, a time or two, if I would not take those notes. On this morning he came down there, and he asked if I would not take those notes—buy his notes—and let him have the money." Surely Van Ness could have had but little doubt at this time as to the ownership of the notes. He knew the notes belonged to Hodgman, and he also knew that the use of Earhart's name in the transaction was a mere pretense. It does not appear that Earhart was present at any of the conversations in regard to the sale of the notes, or that he was ever consulted or alluded to. McLeod testifies: "He [Van Ness] spoke to me different times about the notes, to see what I could pay on them. He [Van Ness] asked me if I would have any objections to taking Hodgman in the way he was before, and I told him I didn't want any partner, if I could get along without one. He [Van Ness] says, 'Well, you know—of course you know—that is Wes' [Hodgman's] money.' I said I never knew positively, although I always supposed so. That conversation took place probably in February or March, 1891." And yet, when Hodgman gives Van Ness a receipt for the $625, claimed to be in payment for the notes, the receipt is signed, "J. W. Hodgman, for D. Earhart." That Van Ness could have had the intimate acquaintance

with Hodgman, and with his business and business transac-
tions, the record shows him to have had; that he should have
acted as his agent in the collection and remittance of money
paid upon notes purporting to be the property of Earhart, but.
which Van Ness knew were the property of Hodgman, and
still be ignorant of the fact that Hodgman was resorting to
these shifts and subterfuges to avoid his creditors, passes belief.
We have examined the record with most scrutinizing care, and
we are forced to the conclusion that the special findings 3, 4
and 6 are not supported by the evidence; that the defendant
Van Ness was fully cognizant of the object and purpose of
Hodgman to hinder, delay and defraud his creditors; that
Hodgman was, at the time of the garnishment served on the
defendant Van Ness, the owner of the said notes. The judg-
ment of the district court is reversed, and the cause remanded,
with directions to enter judgment for the plaintiff in accordance.
with the prayer of its complaint.

Morgan, C. J., and Sullivan, J., concur.